IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

```
MICHAEL GALLAGHER,            )
                             )
            Plaintiff,        )        5:00CV1161
                             )
       v.                     )
                             )
                             )
THE IBEW LOCAL UNION NO. 43,  )        MEMORANDUM OPINION
BURNS ELECTRIC CO., INC., and )
RIDLEY ELECTRIC,              )
                             )
            Defendants.       )
_____)
```

## INTRODUCTION

This matter came before the Court for trial on September 29, 2008 – October 1, 2008.  The Court has considered the evidence, the trial briefs and arguments of counsel, and the applicable law, and enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## FINDINGS OF FACT

1.  Mr. Gallagher was over the age of 40 during the relevant time period.

2.  Mr. Gallagher was a member of the International Brotherhood of Electrical Workers Local Union No. 43 ("Union")

during the relevant time period.  The Union is a trade union that represents electricians in and around central New York.

3.   Union members are classified according to their skills and work experience.  At all times relevant to this case, Mr. Gallagher was classified as a "Journeyman Wireman."

4.   The Union has negotiated collective bargaining agreements with the Finger Lakes New York Chapter of the National Electrical Contractors Association, Inc. ("NECA")(*See* Exhs. J1, J3).  The Union and NECA entered a collective bargaining agreement referred to as the "Inside Construction Agreement" which was effective from June 1, 1995 through May 31, 1997 ("1995 Inside Construction Agreement")(*See* Exh. J1).  The 1995 Inside Construction Agreement was succeeded by a second Inside Construction Agreement that was effective from June 1, 1997 through May 31, 2000 ("1997 Inside Construction Agreement")(*See* Exh. J3).  Mr. Gallagher was employed under the 1995 and 1997 Inside Construction Agreements.

5.   Ridley Electric ("Ridley") and Burns Electric Co., Inc. ("Burns") are signatory electrical contractors to the 1995 and 1997 Inside Construction Agreements.  As signatory contractors, Burns and Ridley are bound by the terms of the 1995 and 1997 Inside Construction Agreements.

6.   The 1995 and 1997 Inside Construction Agreements state the procedure for referring Union members to employment

-2-

(*See* Exhs. J1 at p. 14-18, J3 at p. 25-28).[1]  During the relevant time period, the Union ran an exclusive hiring hall in which employers contacted the Union when they needed workers, and the Union contacted its members to refer employment.  The referral process contains the following detailed provisions:

> a.   Union members seeking employment are divided into one of four "Groups".[2] Group I contains Journeyman Wiremen who reside in the Union's jurisdiction and who have worked at least one in the last four years in the Union's jurisdiction.  Group II contains Journeyman Wireman who do not meet the work and residency requirements of Group I.  Group III contains members who are not Journeyman Wireman but have at least two years experience in the trade, reside in the Union's jurisdiction, and have worked at least six months in the last three years in the Union's jurisdiction.  Group IV contains all other members who have worked at least one year in the trade.  Union members are placed in the highest priority Group for which they qualify.

> b.   Union members seeking employment ("applicants") fill out an application to be placed on an "Out of Work List".[3]  A separate out of work list is maintained for each Group.  Applicants are listed on the appropriate out of work list in chronological order and are referred for employment in the order in which their name appears on the

---

[1] The provisions discussed are the same under the 1995 and 1997 Inside Construction Agreements.

[2] The parties used the terms "Group" and "Book" interchangeably.

[3] The parties used the terms "Out of Work List" and "Referral List" interchangeably.

referral list.[4]  If the Union refers an applicant, and the applicant accepts the referral, his name is taken off the referral list unless the job is a "short call."[5]  The parties referred to this process as a "first in, first out" process.

      c.    The Union must refer applicants on the Group I out of work list before referring applicants on the out of work lists for Groups II, III, or IV.  Applicants on the out of work lists for Groups II, III, and IV are referred accordingly.

      d.    There are four exceptions to the "first in, first out" referral procedure.  First, a contractor may request an applicant with special skills.  In this case, the first applicant possessing the special skill on the out of work list is referred (starting with the Group I referral list).  Second, a contractor can reject any applicant for employment.  Third, a contractor can request a foreman by name, provided the foreman is listed on the highest priority Group referral list (*See* Exhs. J1 at p. 4, J3 at p. 4).  Fourth, on all jobs requiring five or more Journeyman, at least every fifth Journeyman, if available, must be 50 years of age or older (*See* Exhs. J1 at p. 8, J3 at p. 5).  This provision only applies if all names on a higher priority Group referral list have been exhausted.  If the provision applies, the first journeyman on the highest priority Group referral list satisfying the age requirement is referred.

---

[4] An applicant who has been placed on the out of work list must renew his application every thirty days or his name will be removed from the list.  During the relevant time period, applicants could limit the geographic area in which they would accept work and would only be referred for employment if the job was located in their designated geographic area.

[5] During the relevant time period, if an applicant was referred to a job that was for forty hours or less, the applicant maintained his placement on the out of work list.

-4-

7.   The Group I out of work list is publicly posted in the Union hall.

8.   Mr. Gallagher was a Group I journeyman wireman in 1995, 1996, and 1997.

9.   Mr. Gallagher used the referral procedure and obtained employment through the Union in 1995, 1996, and 1997.

10.   Mr. Gallagher was not employed by Burns in 1995, 1996, or 1997 (*See* Exh. D20).  Mr. Gallagher was employed by Ridley for one job during the years 1995, 1996, and 1997 (*See* Exh. D20).  Mr. Gallagher knew he was being referred to Ridley for a two-week job and that he would be automatically terminated at the end of the two-week period.

11.   Dr. Allan Mazur conducted statistical analyses regarding journeyman wireman workers in the Union during the years 1995, 1996, and 1997 (*See* Exh. P17).

12.   All journeyman wireman workers is the population that should be analyzed to determine whether younger journeyman wireman workers work more hours and are laid off at a lesser rate than older journeyman wireman workers.

13.   The code "JW-2" refers to journeyman wireman workers.  Dr. Mazur excluded "JW-2s" from his statistical analyses (*See* Exh. P17).

14.   Dr. Mazur did not consider the referral procedure when conducting his statistical analyses.

15.  Dr. Mazur did not conduct statistical analyses to eliminate several potential causes for any correlation between age and hours worked.

16.  Neither Burns nor Ridley used one of the exceptions to the referral procedure in 1995, 1996, or 1997 to select a younger journeyman wireman worker ahead of an older journeyman wireman worker with priority on the Group I referral list.

17.  The Union did not aid or allow any contractor to use one of the exceptions to the referral procedure in 1995, 1996, or 1997 to select a younger journeyman wireman worker ahead of an older journeyman wireman worker with priority on the Group I referral list.

18.  The age ratio provision was enforced in accordance with the 1995 and 1997 Inside Construction Agreements in 1995, 1996, and 1997.

19.  The special skill, foreman, and rejection exceptions to the referral procedure are based on reasonable factors other than age.

20.  Each contractor is responsible for developing and implementing its own lay off procedure.

21.  Mr. Gallagher filed a grievance with the Union on March 3, 1997, claiming age discrimination (*See* Exh. P6).  The grievance was denied after being considered by a Labor-Management Committee on May 2, 1997 (*See* Exh. P12).

-6-

22. Mr. Comer, acting on behalf of the Union, sent Mr. Gallagher letters dated March 19 and March 20, 1997 regarding Mr. Gallagher's eligibility to obtain employment (*See* Exhs. P2, P3). These letters did not have an adverse impact on Mr. Gallagher.

23. Mr. Gallagher was referred for employment shortly after receiving Mr. Comer's March 20, 1997 letter (*See* Exh. D20).

24. Mr. Towsley, acting on behalf of the Union, sent Mr. Gallagher and approximately twenty other individuals a letter dated August 31, 1999 that informed the individuals they would be removed from the out of work list (*See* Exh. P14, Towsley testimony). The Union sent this letter because work was available in the Union's jurisdiction, and the individuals were working outside the Union's jurisdiction. The letter indicated the individuals would be placed back onto the referral list upon seeking work in the Union's jurisdiction. This letter was not sent to Mr. Gallagher as the result of any activity Mr. Gallagher engaged in under the Age Discrimination in Employment Act ("ADEA").

25. Mr. Towsley sent a letter dated September 13, 1999 to the same individuals that received the August 31, 1999 letter (*See* Exh. P15). This letter reinstated the members onto the out of work list in their original positions. The Union sent the letter because work was no longer available in the jurisdiction, and the Union did not want to punish individuals for seeking work

-7-

elsewhere.  This letter was not sent to Mr. Gallagher as the result of any activity Mr. Gallagher engaged in under the ADEA.

26.  Mr. Gallagher filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination and retaliation (*See* Exh. P22).  The parties have taken the position that the charge was filed on November 17, 1997 (*See also* Filing No. 87).

27.  Mr. Gallagher filed a complaint in the United States District Court for the Northern District of New York on July 28, 2000, alleging age discrimination and retaliation under the ADEA.

28.  According to Mr. Gallagher's testimony, Mr. Gallagher's age discrimination claims relate solely to events that occurred in 1995, 1996, and 1997.

## CONCLUSIONS OF LAW

### 1) STATUTE OF LIMITATIONS

A plaintiff must file a charge with the EEOC before filing a claim under the ADEA in federal court.  29 U.S.C. § 626(d).  For discriminatory acts that occur in New York, the EEOC charge must be filed "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier."  29 U.S.C. § 626(d)(2); *Ford v.*

-8-

*Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 307 (2d Cir. 1996).  Only the 300-day limit is relevant to this case.

The period for filing a charge with the EEOC may be extended under the continuing violation exception.  *See Murphy v. Gen. Elec. Co.*, 245 F. Supp. 2d 459, 470 (N.D.N.Y. 2003); *see also Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985).  If the EEOC charge and complaint allege a continuous policy or practice of discrimination, the statute of limitations may be delayed to the date of the last discriminatory act in furtherance of the continuous policy or practice.  *Miller*, 755 F.2d at 25.

Here, the Union claims all allegations prior to January 11, 1997 are time-barred as outside the 300-day limitation period.  Unless the continuing violation exception applies, the Union's contention is correct.  Mr. Gallagher's EEOC charge and complaint alleged the defendants engaged in a "pattern or practice" of discrimination that resulted in Mr. Gallagher working less hours and being laid off at a higher rate than younger workers.  In addition, the EEOC charge cites September 1, 1997, as the most recent date that acts pursuant to the continuing discrimination occurred.  Accordingly, the continuing violation exception applies.[6]  Mr. Gallagher's EEOC charge was

_____

[6] The Court recognizes that application of the continuing violation exception is generally disfavored by courts in the Second Circuit; however, the Court finds the exception should be applied in this case.  *See Murphy*, 245 F. Supp. 2d at 470.

-9-

timely filed, and acts occurring in furtherance of the discriminatory policy prior to January 11, 1997, are not time-barred.

**2) DISPARATE IMPACT CLAIMS**

The ADEA makes it unlawful for an employer or labor organization to discriminate on the basis of age against an individual who is age 40 or older.  29 U.S.C. §§ 623, 631.  The defendants do not dispute that they must comply with the ADEA.

A plaintiff claiming age discrimination under the ADEA can sue under a disparate treatment theory or a disparate impact theory.  *Dist. Council 37 v. N.Y. City Dep't of Parks and Recreation,* 113 F.3d 347, 351 (2d Cir. 1997).  Here, Mr. Gallagher's age discrimination claims rely solely on a disparate impact theory.  A disparate impact theory claim attacks an employment practice or policy that is neutral on its face but is discriminatory in operation.  *Smith v. Xerox Corp.*, 196 F.3d 358, 364 (2d Cir. 1999)(*quoting Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006).  There are two elements to a disparate impact claim: (1) first, the plaintiff must identify the specific employment practice being challenged, and (2) second, the plaintiff must show that the identified employment practice has an adverse impact on the plaintiff as a

member of a protected class.  *See Smith*, 196 F.3d at 364.  The plaintiff does not need to prove discriminatory intent.  *Id.*

A plaintiff cannot establish the first element of the prima facie case by pointing to a generalized policy that leads to a disparate impact.  *Smith v. City of Jackson,* 544 U.S. 228, 241 (2005).  Instead, the plaintiff must isolate and identify the specific employment practice that has an adverse effect on older workers.  *See Id.* (quoting *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 656 (1989)).

A plaintiff can offer statistical evidence to establish the second element of the prima facie case.  *Smith*, 196 F.3d at 364-65.  Statistical data must be drawn from the relevant population, which is generally the eligible labor pool.  *Id.* at 368.  Disparities in the statistical data between younger and older workers must be "sufficiently substantial to raise an inference of causation."  *See Id.* at 365.  Whether data is "sufficiently substantial" is determined on a case-by-case basis.  *Id.* at 366.  The plaintiff must also show that the statistical disparity between older and younger workers was caused by the identified employment practice or policy.  *See Wards Cove Packing Co.,* 490 U.S. at 657 (analyzing disparate impact claims under Title VII of the amended Civil Rights Act of 1964),[7] *superseded*

---

[7] The Second Circuit generally analyzes disparate impact claims brought under the ADEA and Title VII of the Civil Rights Act identically.  *Smith*, 196 F.3d at 367.

*on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071; *see also Diehl v. Xerox Corp.*, 933 F. Supp. 1157, 1167 (W.D.N.Y. 1996).  Otherwise, an employer could be held responsible for "the myriad of innocent causes that may lead to statistical imbalances in the composition of their work forces." *Wards Cove Packing Co.,* 490 U.S. at 657.

If a plaintiff establishes the prima facie case for a disparate impact claim, the defendant can affirmatively defend the claim by showing that the employment policy is based on reasonable factors other than age.  29 U.S.C. § 623(f); *Meacham v. Knolls Atomic Power Lab.*, 128 S.Ct. 2395, 2401-02 (2008).

Here, Mr. Gallagher identified the referral procedure, and specifically the exceptions to the referral procedure, as a facially neutral practice or policy that adversely impacts older workers.[8]  Mr. Gallagher offered statistical data compiled by his expert, Dr. Allan Mazur, to prove the referral procedure caused older journeyman workers to work less hours than younger journeyman workers.[9]

---

[8] "Older workers," as used in this opinion, refers to workers age 40 or older, which is the class of workers protected by the ADEA.  There is no dispute that Mr. Gallagher is a member of this protected class.

[9] Burns and Ridley objected to Dr. Mazur's report and accompanying testimony at trial on the ground that Dr. Mazur's conclusions failed to comport to the admissibility requirements

Foremost, Mr. Gallagher cannot rely on Dr. Mazur's report because Dr. Mazur failed to analyze the correct population.  By excluding "JW-2s" from his analysis, Dr. Mazur failed to consider all journeyman wireman workers.  Accordingly, Dr. Mazur's conclusions are irrelevant.

Even if Dr. Mazur had analyzed the correct population, his conclusions are insufficient to establish a prima facie case for age discrimination.  While Dr. Mazur's report indicates there is a correlation between age and hours worked, his report does not identify the cause of this correlation.  Rather, several other factors were identified as potential causes for the correlation, such as older workers voluntarily choosing to work less hours or older workers choosing to limit the geographic area in which they accept jobs.  Dr. Mazur did not conduct any statistical analyses to eliminate these potential causes as the source of the correlation.  Nor did Dr. Mazur conduct any statistical analyses to determine whether the referral procedure was the cause of the correlation.  Indeed, Dr. Mazur testified that he was only vaguely familiar with the referral procedure,

---

of Federal Rule of Evidence 702.  The Court received the report subject to the objection.  After review, the Court finds Burns and Ridley's objection should be granted because Dr. Mazur's conclusions are irrelevant, and therefore, not helpful to the trier of fact, as more fully discussed in this opinion.

-13-

and he did not consider the referral procedure during his testing.  Thus, plaintiff's statistical evidence does not satisfy the second element of the prima facie case for age discrimination.

In addition to the referral procedure, there was some indication at trial that Mr. Gallagher identified the lay off process as an additional policy that adversely impacts older workers.  However, Mr. Gallagher did not identify any specific lay off procedure, and therefore, failed to establish the first element of the prima facie case for a disparate impact claim. Based on the foregoing, Mr. Gallagher's disparate impact claims fail against the Union, Ridley, and Burns.

### 3) RETALIATION CLAIMS

Under the ADEA, it is unlawful for an employer or labor organization to discriminate against an individual because the individual has opposed a discriminatory practice or participated in investigating discriminatory acts.  29 U.S.C. § 623(d). Accordingly, the plaintiff must prove four elements to make out a prima facie case for retaliation under the ADEA: (1) the plaintiff engaged in a protected activity under the ADEA, (2) the employer was aware that the plaintiff engaged in the activity, (3) the employer took adverse action against the plaintiff, and (4) there is a causal connection between the protected activity and the adverse action. *Kessler v. Westchester County Dep't. of Social Serv.*, 461 F.3d 199, 205-206 (2d Cir. 2006).

-14-

At the close of the plaintiff's case-in-chief, Burns and Ridley moved for judgment on Mr. Gallagher's age discrimination and retaliation claims.  The Court granted Burns and Ridley judgment on the retaliation claim pursuant to Federal Rule of Civil Procedure 52(c) because Mr. Gallagher failed to offer any evidence of retaliation by Burns or Ridley.

With regard to the Union, Mr. Gallagher relied on correspondence he received from Mr. Comer and Mr. Towsley as proof of retaliation by the Union.  The Court has found that Mr. Comer's letter did not have an adverse effect on Mr. Gallagher, and Mr. Towsley's letters were not the result of any protected activity Mr. Gallagher engaged in under the ADEA.  Accordingly, Mr. Gallagher failed to make out a prima facie case for retaliation, and his claims for retaliation against the Union must fail.

**CONCLUSION**

For the reasons stated herein, the plaintiff's complaint will be dismissed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 15th day of October, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court

-15-
